UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
In re

       Jeffrey Shankman,

                 Debtor.
----------------------------------------------------------x
In re

       Jeffrey H. Shankman,

                 Debtor.
----------------------------------------------------------x

Chapter 13

Case No. 07-46258-CEC

Chapter 7

Case No. 07-40001-CEC


<u>DECISION</u>


Appearances:

| | |
|---|---|
| Jeffrey Shankman | Michael J. Macco, Esq. |
| PO Box 3338 | 135 Pinelawn Road |
| New York, New York 10163 | Suite 120 South |
| Debtor *pro se* | Melville, New York 11747 |
| | Chapter 13 trustee |
| | |
| Mark Friedman, Esq. | Mitchell J. Flachner, Esq. |
| Silverman Perlstein & Acampora LLP | Hankin, Handwerker & Mazel PLLC |
| 100 Jericho Quadriangle | 7 Penn Plaza |
| Suite 300 | Suite 904 |
| Jericho, New York 11753 | New York, New York 10007 |
| Attorneys for Debra Kramer, Chapter 7 | Attorneys for Clearview Gardens Sixth |
| trustee of the estate of Jeffrey H. Shankman | Corporation |


CARLA E. CRAIG
Chief United States Bankruptcy Judge

1

This matter comes before the Court on the motions of the Michael Macco (the "Chapter 13 trustee") and Clearview Gardens Sixth Corporation ("Clearview") seeking the dismissal of this Chapter 13 case.  In the alternative, Clearview seeks relief from the automatic stay imposed by 11 U.S.C. § 362.  Jeffrey Shankman (the "debtor") requests that the dismissal motions be denied, or alternatively, seeks to convert his pending Chapter 7 case to one under Chapter 13 pursuant to 11 U.S.C. § 706(a).  A hearing was held during which the Court heard oral argument from all parties.  For the following reasons, the Chapter 13 case is dismissed and the debtor's request to convert his Chapter 7 case to one under Chapter 13 is granted.

## Jurisdiction

This court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the Eastern District of New York standing order of reference dated August 28, 1986.  This decision constitutes the Court's findings of fact and conclusion of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

## Facts

The following facts are undisputed.

On January 2, 2007, the debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code.  Thereafter, Debra Kramer (the "Chapter 7 trustee") was appointed trustee.  The debtor was represented by counsel at the time of filing, but has since appeared *pro se* because his counsel has fallen ill and is unable to continue the representation.

On Schedule A, the debtor stated that he owned a cooperative apartment in Queens, New York.  On amended Schedule D, he named Clearview as a secured creditor holding a judgment lien in the amount of $147,574.56. Clearview was originally listed on Schedule F as a general unsecured

creditor. The debtor then amended Schedule F, removing Clearview from the list of unsecured creditors and listed other unsecured creditors holding debts totaling $1,368. According to Schedules I & J, the debtor's monthly income at the time he filed his Chapter 7 petition was $2,083 and his monthly expenses were $2,170, leaving him a net income of -$87.

On February 26, 2007, Clearview filed a motion seeking relief from the automatic stay pursuant to 11 U.S.C. § 362 to continue an action to obtain possession of the apartment and to sell it. Clearview asserted that it obtained a pre-petition judgment against the debtor and his spouse in state court in the amount of $147,574.56. Clearview argued that it was owed an additional $3,415 in unpaid maintenance and $5,800 for legal fees and expenses incurred in connection with enforcing the judgment. Clearview also argued that the judgment terminated the proprietary lease to the apartment, and stated that the debtor filed the Chapter 7 petition a day before he was scheduled to be evicted from the apartment.

On March 22, 2007, the Court so-ordered a stipulation between the Chapter 7 trustee and Clearview resolving Clearview's motion for relief from the automatic stay. The stipulation fixed Clearview's judgment against the debtor and his wife at $147,574.56 and gave the Chapter 7 trustee six months to sell the apartment. The stipulation further provided that, in the event the Chapter 7 trustee does not sell the apartment within six months, Clearview would be granted relief from the automatic stay upon separate order of the Court.

On July 13, 2007, an order was entered granting the debtor a discharge of his debts in his Chapter 7 case.

On July 20, 2007, the Chapter 7 trustee filed a letter advising the court that assets were discovered in the case. Thereafter, October 23, 2007 was set as the deadline for filing proofs of

claims.  On September 24, 2007, Clearview filed a proof of claim asserting a secured claim in the amount of $175,849.46.  This is the only proof of claim filed in the Chapter 7 case.

On October 24, 2007, the Court so-ordered a second stipulation between Clearview and the Chapter 7 trustee which allowed Clearview to proceed with the sale of the apartment.  The second stipulation also provided that the Chapter 7 trustee would be entitled to any surplus money from the sale, and Clearview agreed to remit to the estate $20,000 (the "carve-out") from the sale proceeds in full satisfaction of any claim the estate has against Clearview.  Any distribution to pay the administrative expenses and general unsecured creditors would be made from the carve-out. Clearview would then have a subordinated unsecured claim for the $20,000 carve-out amount, which would be paid after all administrative expenses and unsecured creditors are paid in full, not including interest.[1]

On November 14, 2007, during the pendency of the Chapter 7 case, the debtor filed a *pro se* voluntary petition under Chapter 13 of the Bankruptcy Code.  On his Chapter 13 petition, the debtor indicated that Clearview, as landlord, has a judgment of possession against his residence.  On Schedule A, he stated that he owned the apartment in "fee simple."  The only creditor identified on his schedules is Clearview, which is listed as a general unsecured creditor holding a claim of $174,574 for "rent."  On Schedule I, the debtor stated that his monthly income is $3,800, consisting of $800 in social security benefits and $3,000 in assistance from his brother.  Schedule J indicates that the debtor's monthly expenses are $1,640, leaving him a net income of $2,160.

---

[1] Since no unsecured claims have been filed in this case, these funds will presumably be used to pay administrative expenses (the trustee's attorneys' fees, expenses and commissions), and the balance, if any, will be returned to Clearview.  Though the trustee may, if there is a surplus after payment of administrative expenses, notify the scheduled unsecured creditors of the opportunity to file late proofs of claim, the schedules reflect only two creditors holding unsecured claims totaling $1,368.

On November 19, 2007, the Chapter 13 trustee filed a motion seeking to dismiss the Chapter 13 case with prejudice to refiling for a period of 180 days because the debtor's Chapter 7 case is pending.  On November 20, 2007, Clearview also filed a motion to dismiss the debtor's Chapter 13 case, or alternatively, seeking relief from the stay imposed by 11 U.S.C. § 362 to allow it to evict the debtor from the apartment so that it can be sold by auction.  The debtor requested that the dismissal motions be denied, and alternatively requested that his Chapter 7 case be converted to one under Chapter 13.

On November 26, 2007, the debtor filed his proposed Chapter 13 plan.  It provides for a monthly payment of $1,500 for a period of 60 months.  It also provides for the sale of the apartment to pay the creditors (i.e., Clearview) in full.

Discussion

A.    Whether A Debtor May Maintain a Chapter 7 and a Chapter 13 Case Simultaneously

The Chapter 13 trustee and Clearview argue that the debtor cannot have two cases, one under Chapter 7 and one under Chapter 13, pending simultaneously.  The debtor argues that he is permitted to file a petition under Chapter 13 while his Chapter 7 case is pending.

Although there is no statutory provision that prohibits maintaining two bankruptcy cases at the same time under separate chapters of the Bankruptcy Code, the majority of courts, including courts in this district, have held that a debtor may only have one case pending at any given time. See  Turner v. Citizens Nat'l Bank of Hammond (In re Turner), 207 B.R. 373, 379 ( B.A.P. 2d Cir. 1997); In re Myers, No. 07-14565 (BIF), 2007 WL 2428694, at *9 (Bankr. E.D. Pa. August 22, 2007); In re Lord, 295 B.R. 16, 19 (Bankr. E.D.N.Y. 2003); In re Humbreto, No. 00-12929 (DAS), 2000 WL 760696, at *1 (Bankr. E.D. Pa. June 9, 2000); In re Barnes, 231 B.R. 482, 484 (E.D.N.Y.

1999).  A minority of courts have declined to adopt a per se rule against the filing of simultaneous Chapter 7 and Chapter 13 cases by the same debtor, where the cases relate to different assets and different debts.  E.g., In re Kosenka, 104 B.R. 40 (Bankr. N.D. Ind. 1989).  Even under the minority view, however, a Chapter 13 case may not be filed to obtain control of an asset which is simultaneously being administered in a Chapter 7 case.  Put differently, if an asset is property of the estate in a Chapter 7 case, it is not property of the debtor at the time of the filing of the subsequent Chapter 13 case, and therefore does not become property of the estate in the Chapter 13 case.  See 11 U.S.C. § 541(a)(1) (the bankruptcy estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case").  In other words, an asset cannot be property of the estate in two bankruptcy cases at the same time.

Here, the Chapter 7 trustee has not abandoned the estate's interest in the apartment.  The Chapter 7 trustee has entered into a stipulation pursuant to which Clearview will sell the apartment, and the estate will receive at least $20,000 from the proceeds of the sale.  Since the apartment is property of the estate in the Chapter 7 case, it cannot be property of the estate in the Chapter 13 case, as contemplated by the debtor.

Therefore, the debtor's Chapter 13 case must be dismissed.  The debtor is barred from refiling a Chapter 13 case while his Chapter 7 case is pending.  Clearview's request for relief from the automatic stay in the Chapter 13 case pursuant to 11 U.S.C. § 362(d)(4) is accordingly moot.[2]

---

[2] This should not be construed to imply that 11 U.S.C. § 362(d)(4) would be applicable with respect to a cooperative apartment.

B.    Debtor's Ability to Convert His Chapter 7 Case to One Under Chapter 13

The debtor argues that he is entitled to convert his Chapter 7 case under 11 U.S.C § 706(a). He argues that he was inadequately represented by counsel and that his request to convert his Chapter 7 case to one under Chapter 13 is made in good faith.  He states that he plans to be employed by January 15, 2008, and that he now has more income and will use all his disposable income to repay his debts.

Clearview argues that the debtor should not be permitted to convert his Chapter 7 case because the conversion would be in bad faith.[3]

Section 706(a) of the Bankruptcy Code provides, in relevant part, that "[t]he debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title."  11 U.S.C. § 706(a). The legislative history of the section provides:

> [T]his section gives the debtor the one-time absolute right of conversion of a liquidation case to a reorganization or individual repayment plan case . . . . The policy of the provision is that the debtor should always be given the opportunity to repay his debts.

S. Rep. No. 95-989, at 94 (1978), *reprinted in* 1978  U.S.C.C.A.N. 5787, 5880.

---

[3] Clearview also argues that the debtor should have sought to convert the Chapter 7 case by motion under Bankruptcy Rule 9014 and that his request to convert the case in his opposition to the motions to dismiss is procedurally improper.  Clearview relies on In re Carrow, 315 B.R. 8 (Bankr. N.D.N.Y. 2004), for support that the conversion request should be made by written motion pursuant to Bankruptcy Rule 9013.  This Court believes, however, that denying the debtor's request on this ground would be elevating form over substance.  The debtor did not request the conversion *ex parte*, but served his Affidavit in Opposition to Dismiss and Not Granting Relief From the Automatic Stay or in the Alternative to Convert My Chapter 7 to Chapter 13 on Clearview and the Chapter 13 trustee.  Although the Chapter 7 trustee was not served, she obviously received notice of the debtor's request because she appeared at the hearing by counsel.  Furthermore, although the parties did not receive 10 days' notice of the request, this Court has the authority to shorten the notice period pursuant to Bankruptcy Rule 9006(c).  It should be noted that none of the parties requested additional time to respond to the debtor's application to convert the case.

The Supreme Court has recently ruled that the right to convert a case under § 706(a) is not absolute.  See Marrama v. Citizens Bank of Am., 127 S. Ct. 1105 (2007).  Previously, courts were split on the issue.  Compare In re Pakuris, 262 B.R. 330 (Bankr. E.D. Pa. 2001) (court must consider totality of the circumstances to decide whether a debtor may convert his case); In re Krishnaya, 263 B.R. 63 (Bankr. S.D.N.Y. 2001) (bankruptcy court has discretion to deny motion to convert); and In re Marcakis, 254 B.R. 77 (Bankr. E.D.N.Y. 2000) (right to convert is not absolute); with In re Carrow, 315 B.R. 8 (Bankr. N.D.N.Y. 2004) (debtor has unfettered right to convert).  The Supreme Court resolved this question, holding that a debtor's right to convert under § 706(a) may be forfeited by "fraudulent conduct by the atypical [debtor] who has demonstrated that he is not entitled to the relief available to the typical debtor."  Marrama, 127 S. Ct. at 1111.  The Court stated that pre-petition bad faith may constitute "cause" for dismissal under § 1307, and that

> [i]n practical effect, a ruling that an individual's Chapter 13 case should be dismissed or converted to Chapter 7 because of prepetition bad-faith conduct . . . is tantamount to ruling that the individual does not qualify as a debtor under Chapter 13.  That individual, in other words, is not a member of the class of "'honest but unfortunate debtor[s]'" that the bankruptcy laws were enacted to protect.

Marrama, 127 S. Ct. at 1111 (citing Grogan v. Garner, 498 U.S. 279, 287 (1991)) (second alteration in original).  Although the Marrama Court did not delineate precisely the type of conduct that may result in forfeiture of the right to convert, the Court stated that such conduct must be "atypical."  Id. at 1112 n. 11.

In deciding whether to grant a motion to convert, courts have considered all the circumstances of the case, including the possibility of abuse and eligibility of the Chapter 7 debtor

to be a debtor under Chapter 13.  See Pakuris, 262 B.R. at 335-336; Marcakis, 254 B.R. at 82.  Other

factors to consider are:

> (i)     whether the debtor is seeking to convert to chapter 13 in good
>         faith (including a review of the facts such as the timing of the
>         motion to convert; the debtor's motive in filing the motion;
>         and whether the debtor has been forthcoming with the
>         bankruptcy court and creditors);
>
> (ii)    whether the debtor can propose a confirmable chapter 13
>         plan;
>
> (iii)   the impact on the debtor of denying conversion weighed
>         against the prejudice to creditors caused by allowing
>         conversion; [and]
>
> (iv)    the effect of conversion on the efficient administration of the
>         bankruptcy estate.

Pakuris, 262 B.R. at 335-336.

Bad faith is often found in cases where the debtor fraudulently fails to disclose assets.  See

Marrama, 127 S. Ct. 1105; Marcakis, 254 B.R. 77; In re Jeffrey, 176 B.R. 4 (Bankr. D. Mass. 1994).

Here, the debtor listed his cooperative apartment in both the Chapter 7 and Chapter 13 petitions, and

there has been no allegation that the debtor has attempted to hide any assets.

Bad faith and abuse of the bankruptcy process may also be found where a debtor seeks to

convert his Chapter 7 case after receiving a discharge.  As one court has stated:

> Where the debtors have already received their discharge, it is clear
> that their purpose in converting to a Chapter 13 is *not* to repay their
> debts.   Rather their purpose is to evade their obligations under
> Chapter 7.

Jeffrey, 176 B.R. at 6.  Here, however, there are only two scheduled unsecured creditors in the

Chapter 7 case, with claims totaling less than $1,400.  Neither of these creditors filed a proof of

claim.  This Court declines to find, under these circumstances, that the debtor's request to convert his Chapter 7 case to one under Chapter 13 constitutes a bad faith attempt to avoid paying these unsecured creditors.

Clearview filed a proof of claim asserting that its claim is secured by the apartment.  As a secured creditor, its claim would not be affected by the debtor's Chapter 7 discharge.  Although the debtor scheduled Clearview as an unsecured creditor in the Chapter 13 case, he apparently does not take the position that Clearview's claim was discharged in the Chapter 7, as he proposes to pay the claim in his Chapter 13 plan.  If the debtor were to seek to avoid paying Clearview in the Chapter 13 case because of his Chapter 7 discharge, a finding that the debtor is attempting to use Chapter 13 in bad faith as a means to avoid his obligations under Chapter 7 might well be warranted.  Whether the debtor's plan properly treats Clearview's claim or can otherwise be confirmed is not being determined at this time.

The Chapter 7 trustee argues that the debtor has not shown a change in circumstances to indicate that he would be able to successfully reorganize.  (Tr.[4] at 8-9.)  Section 706(a) does not, on its face, require that the debtor show a change in circumstances.  However, courts have considered whether the debtor has a likelihood of successful reorganization when deciding whether to grant a motion to convert under § 706(a).

Here, the debtor has indicated that he is receiving financial assistance from his brother and he expects to be fully employed by the middle of January 2008.  Furthermore, the debtor has stated that he might try to sell the apartment, which could enable him to pay Clearview's claim in full.

---

[4]  "Tr." refers to the transcript of the hearing held on December 11, 2007.

Given the possibility that the debtor would be able to confirm a plan, this Court believes that it is inappropriate to deny him that opportunity. See Krishnaya, 263 B.R. at 70-71 (allowing a debtor to convert to Chapter 13 in spite of the possibility that he may be unable to confirm a plan).

The Chapter 13 trustee argues that even if the Chapter 7 case were to be converted to one under Chapter 13, Clearview will still be able to proceed with the sale of the apartment pursuant to the stipulation dated October 24, 2007, which remains a valid order. (Tr. at 5.) However, it is possible that the debtor may argue that the stipulation, which provides for the administration of $20,000 of the sale proceeds by the Chapter 7 trustee, should not be given effect after the case is converted to Chapter 13. It is also possible that the debtor may seek to reimpose the stay or sell the apartment before the sale takes place. The October 24, 2007 so-ordered stipulation is, therefore, not a basis to deny the conversion motion.

The final factors to consider, the relative impact on the debtor of denying conversion weighed against the prejudice to the creditor, and the effect on the efficient administration of the estate, do not preclude allowing conversion to Chapter 13. With regard to the relative impact on the debtor and creditor, affording the debtor an opportunity to save his home in Chapter 13, or to realize any available equity through a sale, will not unduly burden Clearview. Whether the debtor can confirm a Chapter 13 plan should become apparent within a relatively short period of time, and if he cannot, then this case will be reconverted to Chapter 7. See 11 U.S.C. § 1307(b) (provision entitling a debtor to dismiss a Chapter 13 case as of right is inapplicable when the case was converted from Chapter 7). With regard to the impact of conversion on the administration of the estate, it should be remembered that the trustee was apparently unable to sell the apartment, and Clearview was granted relief from the stay to sell it. Therefore, the only action to be taken by the

trustee in the administration of the Chapter 7 case would be the distribution of the $20,000 carve-out whenever Clearview's sale takes place.  Under these circumstances, allowing the debtor to convert the case and giving him the opportunity to propose a plan (in which he might sell the apartment) does not adversely effect the efficient administration of the estate in a material way.

Conclusion

For the foregoing reasons, the debtor's Chapter 13 case is dismissed and his request to convert his Chapter 7 case to one under Chapter 13 is granted.  A separate order will issue herewith.

Dated: Brooklyn, New York
        February 27, 2008

                                    _s/Carla E. Craig_____
                                    CARLA E. CRAIG
                                    Chief United States Bankruptcy Judge